## DE VINE v. STATE.
### No. 23812.

Court of Criminal Appeals of Texas.
Dec. 3, 1947.

Howard S. Smith, of Sulphur Spring, Dick Harbin, of Dublin, and C. O. McMillan, of Stephenville, for appellant.

Ernest S. Goens, State's Atty., of Austin, for the State.

DAVIDSON, Judge.

This is a conviction for unlawfully possessing a narcotic; the punishment, two years in the penitentiary.

The prosecution arose under what is known as the Uniform Narcotic Drug Act, being Chap. 169, Acts 45th Legislature, in 1937, as amended, and appearing as Art. 725b, Vernon's Penal Code, which will be hereafter referred to as the Act.

The indictment contained multiple counts charging that appellant did on the 12th day of May, 1945, (a) unlawfully possess a narcotic drug, to wit, dilaudid, a derivative of opium, (b) unlawfully possess a narcotic drug, to wit, dilaudid hydrochloride, a derivative of opium, (c) unlawfully have under his control said narcotic, (d) unlawfully obtain by fraud said narcotic, (e) unlawfully and by subterfuge obtain said narcotic, and (f) unlawfully by fraud, subterfuge, and deceit obtain said narcotic.

The sole count submitted to the jury was that charging the unlawful possession of a narcotic drug, to wit, dilaudid hydrochloride, a derivative of opium. The conviction rests upon that count.

At the time of the alleged offense appellant was a duly licensed practitioner of medicine in this State and was actively engaged in the practice of that profession at Dublin, Texas. He was connected with a

hospital, where he maintained his office. He was duly authorized under the Federal Narcotic Drug Act, 26 U.S.C.A. Int.Rev. Code, § 2554(c), by the Bureau of Narcotics and had a Federal permit to prescribe, dispense, purchase, and possess narcotics in the course of his practice.

Appellant had complied with both State and Federal laws authorizing a physician to prescribe, administer, purchase, and possess narcotics. We do not understand that the State challenges that fact.

The following facts are relied upon to sustain the conviction.

As a patient, the witness Maxwell, accompanied by his wife, went to appellant for treatment, in the course of which appellant wrote a prescription for Maxwell which called for fifteen tablets of $\frac{1}{16}$ grain "Dilaudid Hcl." This prescription he delivered to Mrs. Maxwell, who carried it to the pharmacist who filled it. Maxwell waited in the reception room of appellant's office. Upon Mrs. Maxwell's return, she, at appellant's request, gave him the box which the pharmacist had given her. Appellant then went into his private office, carrying the box with him. Some time later he returned and administered to Maxwell a hypodermic and delivered to him and his wife the box which had been delivered by the pharmacist to Mrs. Maxwell. Upon arriving at home, Mrs. Maxwell discovered that the tablets in the box were larger than those which were in the box at the time it was delivered to her by the pharmacist. This difference caused them to contact Branum, the city marshal, to whom they delivered the box and contents. Branum subsequently delivered the box and contents to Heddens, a Federal narcotic agent, who forwarded it and three of the tablets by mail to a government chemist at New Orleans, Louisiana, for analysis. The analysis revealed that the tablets were novocaine hydrochloride and not dilaudid hydrochloride. Novocaine hydrochloride is not a derivative of opium; there is no proof that it is a narcotic. The pharmacist who filled the prescription testified that he filled the prescription with and placed in the box dilaudid hydrochloride tablets, which

he delivered to Mrs. Maxwell. Dilaudid hydrochloride is a derivative of opium, and is a narcotic.

The indictment in this case was returned in 1945. Subsequently, appellant moved to another city in this State. In January, 1947, he was there visited by Heddens, the narcotic agent, when, according to Heddens, the following conversation took place, viz.:

"I told Dr. DeVine there was a warrant for his arrest in Stephenville, Texas, for violation of the Texas Uniform Narcotic Drug Act. The Doctor then stated to me something that he had been doing while he was over at Dublin. He stated he had written prescriptions for *patents,* and after they brought back to his office the filled prescriptions, he replaced the medicine in the box, and put other tablets in the box before he gave the box to the patients to take home. He said he took out of those boxes whatever the prescription was written for. Dr. DeVine told me there that he had done that, replaced the original tablets with others, but that since he had left Dublin he took a cure for addiction and he was doing a good business at Sulphur Springs."

Such are the facts upon which the conviction rests. Appellant did not testify.

It is the State's contention that appellant came into the possession of the narcotic by taking same from the filled prescription and substituting another drug therefor—in other words, that appellant acquired the narcotic by theft, subterfuge, or fraud, and therefore his possession was unlawful. Why the State abandoned the counts in the indictment charging appellant with unlawfully acquiring the narcotic, the record does not disclose. The fact remains, however, that this conviction rests upon the count in the indictment charging only the unlawful possession of the narcotic.

The sufficiency of the evidence to sustain the conviction is challenged, it being contended that the facts show that appellant had the right to possess narcotics.

A construction of the Act and certain of its provisions is called for and is a question of first impression in this State.

Section 2 of the Act reads as follows:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug."

By this section, the possession of a narcotic by any person is a felony. It is all-inclusive; no exceptions are therein noted. Narcotic drugs being contraband, Sec. 14, intent or motive with which the narcotic is possessed is neither an element of or defense to such possession. Proof, then, that one is in possession of a narcotic establishes guilt.

Sec. 2A of the Act reads as follows:

"It shall not be unlawful to manufacture, possess, have, control, sell, prescribe, administer, dispense, or compound any narcotic drug where same is authorized under the terms of this Act."

Proof, then, that one is authorized to possess a narcotic under any of the terms of the Act establishes the lawfulness of the possession.

██ These two statutes, 2 and 2A, are a part of the same Act and are of equal dignity. They must, therefore, be construed together. When so construed, they must mean that if the Act authorizes possession of a narcotic, such possession is lawful; otherwise, it is not.

It becomes material, then, to determine wherein the Act authorizes possession of a narcotic and if appellant has discharged the burden resting upon him, Sec. 21, to bring himself within those provisions.

██ A physician—that is, one authorized by law to practice medicine—in this State, Sec. 1, subsection (2), may, in good faith, in the course of his professional practice only, prescribe, administer, and dispense narcotic drugs, Sec. 7, subsection (1). The term "dispense," as there used, in addition to its ordinary meaning, includes "distribute, leave with, give away, dispose of, or deliver." Sec. 1, subsection (17). The terms "prescribe" and "administer"—not being specially defined—are used in their ordinary meaning, as commonly known and understood. So, then, a phy-

sician may, in the course of his professional practice, prescribe, administer, dispense, distribute, leave with, give away, or deliver a narcotic. In addition to these, a manufacturer or wholesaler may sell, upon official written orders, narcotics to a physician, Sec. 5, subsection (1), and a pharmacist may sell, upon official written orders, narcotics to a physician, Sec. 6, subsection (3). The possession of a narcotic so obtained by a physician—that is, from a manufacturer, wholesaler, or pharmacist—is lawful if in the regular course of business, occupation, profession, employment, or duty of the possessor. Sec. 5, subsection (4). The right to administer, dispense, distribute, leave with, give away, dispose of, and deliver, of necessity carries with it the right to possess, because possession is first necessary. Without possession those rights could not be fully exercised. The term "possession," as here used, means the actual care, control, and management of the narcotic. To fully and effectually exercise the right to administer, dispense, leave with, give away, dispose of, and deliver, the physician must, of necessity, have possession of the narcotic.

If we understand the State's position, it is that since there are facts sufficient to show that appellant came into the possession of the narcotic by unlawful means, he could not thereafter be in the lawful possession thereof.

To accept this theory would require, by judicial construction, writing into the Act an additional limitation not found therein—which would be that unless and until a physician came into possession of a narcotic by lawful means, he could not make use of same in any manner.

The Act authorized the physician to make unlimited use of the narcotic in the particulars mentioned. We would not be authorized, by judicial construction, to place a limitation on that right not found in the Act.

It is suggested, also, that the right of possession of narcotics by a physician is controlled by the use he makes thereof—that is, in the regular course of his practice.

The right to use is one thing; the right to possess is another. The right of possession could not be made dependent upon the use made, because possession antecedes the use. The possession of a narcotic by a physician is either lawful or unlawful, and if unlawful, the fact that he thereafter used it in a lawful manner could not erase the unlawfulness of his prior possession.

In the light of what has been said, there appears no escape from the conclusion that, under the rights expressly conferred under the Act, it is not unlawful for the physician duly licensed under the laws of this State to have in his possession, or possess, narcotic drugs.

In reaching this conclusion, we are not unmindful of the imperative necessity that the use as well as possession of narcotic drugs in this State must be strictly controlled and supervised. The evils flowing therefrom so require. On the other hand, the use of narcotics in the relief of suffering humanity by the duly licensed practitioner of medicine is equally necessary and must be preserved and maintained. The duly licensed practitioner of medicine in this State ought not to be required to live in constant fear that the mere possession of a narcotic by him will subject him to arrest, prosecution, conviction, and a sentence to a term in the penitentiary. Such would be the case if we adopted the State's views. It would not be, under the conclusions reached.

What we hold is that, under the Act, it is not unlawful for the duly licensed practitioner of medicine under the laws of this State to possess and have in his possession narcotic drugs. This is the only question before us, and, therefore, the only question decided.

The facts showing that appellant was a duly licensed practitioner of medicine in this State, his conviction for possessing a narcotic drug is reversed and the cause is remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.